07-5211-ag
Lin v. Mukasey

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2007

(Argued: June 24, 2008                    Decided: July 21, 2008)

Docket No. 07-5211-ag

XIU XIA LIN,

     *Petitioner*,

     v.

MICHAEL B. MUKASEY,[1] Attorney General of the United States,

     *Respondent.*

Before: WINTER, MINER, and CABRANES, *Circuit Judges.*

Petitioner seeks review of an order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture. We hold that the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, 310-11 (May 11, 2005), abrogated our holding in *Secaida-Rosales v. INS*, 331 F.3d 297 (2d Cir. 2003), that an adverse credibility determination cannot be based on inconsistencies and omissions that are ancillary or collateral to an applicant's claims of persecution. We conclude that, pursuant to the REAL ID Act, the IJ's adverse credibility was proper in light of the totality of circumstances.

Petition for review denied.

> SHEEMA CHAUDHRY, Law Offices of Michael Brown, New York, New York, *for Petitioner.*
>
> ALLEN W. HAUSMAN, Senior Litigation Counsel (Jeffrey S.

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney Michael B. Mukasey is automatically substituted for former Acting Attorney General Peter D. Keisler as the respondent in this case.

Bucholz, Acting Assistant Attorney General, Richard M. Evans, Assistant Director, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, D.C., *for Respondent.*

PER CURIAM:

This petition requires us to consider the appropriate basis for an adverse credibility determination under the REAL ID Act, Pub L. No. 109-13, 119 Stat. 231 (2005). We write to clarify that the Act, which permits an IJ to base an adverse credibility finding on, *inter alia*, a lack of consistency "between the applicant's . . . written and oral statements[,] . . . the [in]consistency of such statements with other evidence of record . . . and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim,*" *see* 8 U.S.C. § 1158(b)(1)(B)(iii)[2] (emphasis added), abrogated our holding in *Secaida-Rosales v. INS* that "[i]nconsistencies of less than substantial importance for which a plausible explanation is offered cannot form the sole basis for an adverse credibility finding . . . especially . . . when the inconsistencies . . . concern rather matters collateral or ancillary to the [applicant's] claim" for relief, 331 F.3d 297, 308 (2d Cir. 2003) (internal quotation marks omitted). We conclude that, in evaluating an asylum applicant's credibility, an IJ may rely on omissions and inconsistencies that do not directly relate to the applicant's claim of persecution as long as the totality of the circumstances establish that the applicant is not credible.

---

[2] The full text of this provision reads as follows:

Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility[.] [H]owever, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

BACKGROUND

**A. Factual and Procedural History**

Xiu Xia Lin, a native and citizen of China, entered the United States in January 2005 without inspection and shortly thereafter was served with a Notice to Appear charging her with being removable.  In July 2005, Lin filed an application for asylum, withholding of removal, and relief under the Convention Against Torture, based on persecution she allegedly faced in China on account of her practice of Falun Gong.  Lin's claims of persecution rest on two alleged incidents with Chinese officials.  She alleges that in June 2000, upon discovering that she had criticized the government's treatment of Falun Gong practitioners, officials at her school beat her and forced her to sign a statement promising that she would discontinue her involvement with Falun Gong.  A second incident occurred in July 2004, when she was allegedly detained and physically abused by government officials after they discovered Falun Gong literature in her room at home.  According to Lin, her family attempted to rescue her from detention and was able to save her only by bribing a guard.  Sometime thereafter, she allegedly left China for the United States.  In support of her application, Lin submitted several documents, including (1) a notarial birth certificate issued in February 2005; (2) photos of her practicing Falun Gong; (3) a letter from her father; and (4) a letter from the friend Lin claims introduced her to Falun Gong and who Lin alleges was later persecuted for practicing Falun Gong.  Lin also testified in support of her application.

At a March 2005 removal hearing, the Immigration Judge ("IJ") found that Lin was removable as charged.  A subsequent hearing was held on December 16, 2005 to determine Lin's eligibility for asylum, withholding of removal, and relief under the Convention Against Torture.  At the conclusion of that hearing, the IJ found Lin lacking in credibility and denied her application for asylum.  Specifically, the IJ based his adverse credibility determination on certain inconsistencies and omissions between her testimony and her documentary submissions: (1) the absence in both Lin's asylum

application and her friend's letter of any indication that Lin's friend was in hiding to avoid persecution associated with the friend's own Falun Gong activities; (2) the omission in both Lin's asylum application and her father's letter of Lin's allegation that she was detained for twelve hours in 2004; (3) the omission in both Lin's asylum application and her father's letter of the purported bribe that her family had paid to secure her release. The IJ also found it implausible that the government would have issued a birth certificate to Lin during the time Lin claimed that the government was looking for her, noting that "this does raise some doubt about the legitimacy of [Lin's] story." On this basis, the IJ gave the birth certificate "reduced weight." On the other hand, the IJ rejected the government's argument that it was implausible that Lin was able to leave Beijing while the government was looking for her, noting that it was "conceivable that someone could leave a country despite the fact that other government officials are looking for the person." Turning to her application for withholding of removal and relief under the Convention Against Torture, the IJ concluded that Lin had failed to establish her eligibility for either form of relief.

Lin filed a timely appeal of the IJ's decision to the Board of Immigration Appeals ("BIA"). In its October 2007 decision, the BIA affirmed the IJ's adverse credibility determination and dismissed Lin's appeal. *In re Xiu Xia Lin*, No. A 98 718 133 (B.I.A. Oct. 31, 2007), *aff'g* No. A 98 718 133 (Immig. Ct. N.Y. City Dec. 16, 2005). She then sought review in our Court.

In her petition before our Court, Lin argues that the IJ's adverse credibility determination was flawed because: (1) the "discrepancies [and] omissions" relied upon by the IJ are "minimal"; (2) the IJ improperly relied on omissions in her documentary submissions as compared to her testimony; and (3) the IJ relied upon his own speculation in concluding that it was implausible that the government would have given her a birth certificate. Because Lin filed her asylum application after May 11, 2005, her claim is governed by the amendments made to the Immigration and Nationality Act ("INA") by the passage of the REAL ID Act, Pub.L. No. 109-13, 119 Stat. 231 (2005). *See* Title I, § 101(a)(3) of the

4

Act, 119 Stat. 231, 303 (amending 8 U.S.C. § 1158); *see also Liang Chen v. U.S. Att'y Gen.*, 454 F.3d 103, 107 n.2 (2d Cir. 2006).

**B. The Real ID Act**

Prior to the passage of the REAL ID Act, courts of appeals had developed different rules governing the proper basis for an IJ's adverse credibility determination. The law of our circuit provided that when an IJ based an adverse credibility determination on inconsistencies in an asylum applicant's testimony or between the testimony and the documents the applicant submitted, the IJ was required (1) to demonstrate a nexus between inconsistencies in an asylum applicant's testimony and the applicant's claims; and (2) to establish that the inconsistencies were material to the applicant's claims for asylum. *See Secaida-Rosales*, 331 F.3d at 307–08; *Heui Soo Kim v. Gonzales*, 458 F.3d 40, 45 (2d Cir. 2006) (concluding that adverse credibility determination was impermissibly based on minor discrepancies); *see also Chen Yun Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (adopting similar standard); *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999) (same).

In 2005, Congress passed the REAL ID Act, which, *inter alia*, amended the INA in order to "creat[e] . . . a uniform standard for credibility" determinations. *See* H.R. Rep. 109-72, at 166-67 (2005); *see also In re J-Y-C-*, 24 I. & N. Dec. 260, 262 (B.I.A. 2007) (relating the legislative history of the amendment). The REAL ID Act freed an IJ from the nexus and materiality requirements by explicitly stating that an IJ may base an adverse credibility determination on any inconsistencies, "inaccuracies or falsehoods . . *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor*." 8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added). Under the standard established by the REAL ID Act, an IJ is required to evaluate inconsistencies in light of the "totality of the circumstances." *Id.*

## DISCUSSION

We review the agency's factual findings, including adverse credibility determinations, under the

substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Shu Wen Sun v. BIA*, 510 F. 3d 377, 379 (2d Cir. 2007). When evaluating credibility determinations for substantial evidence, we afford "particular deference" to the IJ. *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 (2d Cir. 2004) (internal quotation marks omitted). We must assess whether the IJ has provided "specific, cogent reasons for the adverse credibility finding and whether those reasons bear a legitimate nexus to the finding." *Id.* at 74 (internal quotation marks omitted). "Where the IJ's adverse credibility finding is based on specific examples . . . of inconsistent statements" or "contradictory evidence," a "reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise." *Id.* (internal quotation marks omitted). When the BIA agrees with an IJ's adverse credibility determination and adopts particular parts of the IJ's reasoning, we review the decisions of both the BIA and the IJ. *See, e.g.*, *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005).

In the instant case, each of three inconsistencies or omissions[3] on which the IJ relied in finding Lin not credible were ancillary or collateral to Lin's claims of past persecution. First, because Lin's submissions reveal no inconsistency as to the fact of her detention in 2004, the omission—from both Lin's asylum application and her father's letter—of the fact that she was detained for twelve hours is not material to Lin's claims of past persecution. *Cf. Secaida-Rosales*, 331 F.3d at 309 (concluding that the failure to mention one aspect of the murder of a family member was "not substantial" and likely not "material"); *Xian Tuan Ye v. Dep't of Homeland Sec.*, 446 F.3d 289, 294 (2d Cir. 2006) (finding inconsistencies material where petitioner "testified to a significantly different event that was nowhere outlined in his 1994 application" (internal quotation marks omitted)). Second, because Lin's allegation

---

[3] An inconsistency and an omission are, for these purposes, functionally equivalent. *See, e.g.*, *Secaida-Rosales,* 331 F.3d at 308 (analyzing inconsistencies and omissions in the same manner). A lacuna in an applicant's testimony or omission in a document submitted to corroborate the applicant's testimony, like a direct inconsistency between one or more of those forms of evidence, can serve as a proper basis for an adverse credibility determination. *See, e.g.*, *Singh v. BIA*, 438 F.3d 145, 148 (2d Cir. 2006) (relying on omissions in applicant's corroborating documents to support an adverse credibility determination).

that her friend was in hiding was not material to Lin's own claim of persecution, the omission of that fact in her friend's letter does not go to the heart of Lin's claim. *Cf. Secaida-Rosales*, 331 F.3d at 309 (concluding that omission of friend's death at a political rally was not material to petitioner's own claim of persecution). Finally, the omission from Lin's asylum application and her father's letter of the purported bribe that her family had paid to secure her release is only indirectly related to the allegation that she was in fact detained. *See id.* at 309.

As noted above, our Court determined in *Secaida-Rosales* that it constitutes legal error for an IJ to base an adverse credibility determination on omissions and inconsistencies that are not material to an applicant's claims of persecution. *See* page 5 *ante.* Although we have questioned the continuing relevance of the *Secaida-Rosales* line of cases since the passage of the REAL ID Act, we have not directly addressed the conflict between those cases and the statute. *See Liang Chen*, 454 F.3d at 107 n.2 (observing that the statutory language as amended by the REAL ID Act "would seem to overrule certain holdings of *Secaida-Rosales* and other decisions of this Court" with respect to asylum applications filed after May 11, 2005); *see also id.* at 108 n.3 (same).[4]

Now squarely presented with the question, we conclude that our previous holding that an IJ may not base an adverse credibility determination on inconsistencies and omissions that are "collateral or ancillary" to an applicant's claims, *see, e.g., Secaida-Rosales*, 331 F.3d at 308, has been abrogated by the amendments to the statutory standard imposed by the REAL ID Act. For cases filed after May 11, 2005, the effective date of the Act, an IJ may rely on *any* inconsistency or omission in making an

---

[4] Other courts of appeals have indicated that the REAL ID Act would abrogate similar rules about credibility determinations. *See, e.g., Castaneda-Castillo v. Gonzales*, 488 F.3d 17, 23 n.6 (1st Cir. 2007) (observing that, while pre-REAL ID case law would not permit credibility determinations to be based on *falsus in uno, falsus in omnibus*, under the REAL ID Act standard "the fact-finder is entitled to draw the *falsus in omnibus* inference based upon inaccuracies, inconsistencies, or falsehoods without regard to whether . . . [they go] to the heart of the applicant's claim." (citation and internal quotation marks omitted)); *Jibril v. Gonzales*, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005) (noting that, had the REAL ID Act standard applied to this case, "[petitioner's] demeanor and any inaccuracies in his statements, without regard to whether they go to the heart of his claim, would all be valid bases for the IJ's adverse credibility determination," but concluding that under pre-REAL ID Act case law, such a credibility determination was invalid (emphasis omitted)).

adverse credibility determination as long as the "totality of the circumstances" establishes that an asylum applicant is not credible. 8 U.S.C. § 1158(b)(1)(B)(iii). "[E]ven where an IJ relies on discrepancies or lacunae that, if taken separately, concern matters collateral or ancillary to the claim, the cumulative effect may nevertheless be deemed consequential by the fact-finder." *Tu Lin v. Gonzales*, 446 F.3d 395, 402 (2d Cir. 2006) (citation and internal quotation marks omitted); *see also In re A-S-,* 21 I. & N. Dec. 1106, 1112 (B.I.A. Feb. 19, 1998) (noting that an IJ must conduct an "overall evaluation of testimony in light of its rationality or internal consistency and the manner in which it hangs together with other evidence"); *accord Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 337, n.19 (2d Cir. 2006). We defer therefore to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling.

In the present case, the inconsistencies and omissions relied upon by the IJ were not directly material to Lin's claims, yet the cumulative effect of those inconsistencies reasonably could have affected the IJ's evaluation of Lin's credibility. Lin's failure to include the length of her detention in her asylum application and the omission of that fact from her father's letter could have reasonably convinced the IJ that her story of persecution was fabricated. Similarly, the failure of Lin's friend to mention that the friend was in hiding from Chinese authorities contradicted Lin's testimony that her friend feared further persecution. Because Lin gave no plausible explanation for this omission from her friend's letter, the omission reasonably raised doubts as to the accuracy of Lin's account of her own persecution. These questions about Lin's credibility were further compounded by the omission from her father's letter of the fact that he paid a bribe to have Lin released from detention by government officials. Because we conclude that the cumulative effect of these inconsistencies could have led a reasonable fact-finder to find that Lin was not credible, we must affirm the IJ's adverse credibility determination.

Lin also challenges as impermissible speculation the IJ's suggestion that it was implausible that

8

Lin was able to obtain a copy of her birth certificate during a time she claims that government officials were looking for her. Although we have previously held that an IJ's opinion as to the plausibility of a petitioner's account could not serve as the basis for an adverse credibility determination, *see Secaida-Rosales*, 331 F.3d at 310, there is no doubt that this holding has been abrogated by the REAL ID Act, which directs an IJ to evaluate an applicant's credibility in light of the "inherent plausibility of the applicant's . . . account" of persecution. 8 U.S.C. § 1158(b)(1)(B)(iii); *cf. Ying Li v. BCIS*, 529 F.3d 79, 82 (2d Cir. 2008) ("[W]hen an adverse credibility finding is based partly or entirely on implausibility, we review the entire record, not whether each unusual or implausible feature of the account can be explained or rationalized.")

## CONCLUSION

For the reasons stated above, the petition for review is denied. Any pending motion to stay removal is dismissed as moot.